78 U.S. 331 (1870)
11 Wall. 331
TYLER
v.
DEFREES.
Supreme Court of United States.

*333 Messrs. Brent and Merrick, for the plaintiff in error.
Messrs. A.G. Riddle, S.L. Phillips, and L. Madison Day, for the defendant in error.
*343 *344 Mr. Justice MILLER delivered the opinion of the court.
The question for our consideration is, whether the confiscation proceedings, as found in the special verdict, divested the title of the plaintiff in the lot?
These proceedings do not come before us on a writ of error to correct any irregularities or mere errors of law in the court which rendered the judgment, but they come before us collaterally as the foundation of the defendant's title.
According to the well-settled doctrine in such cases, no error can be regarded here, or could have been considered in the court below on the trial, that does not go to the extent of showing a want of jurisdiction in the court which rendered the judgment condemning the property.[*]
Counsel for the plaintiff in error recognize this principle, but it is remarkable what a number of supposed errors in the proceedings are found by them to be jurisdictional. Almost every point that has been urged in the cases of Garnet v. The United States, and Miller v. The Same, on writ of error directly to those confiscation proceedings, is here relied on as sufficient to defeat the jurisdiction. Looking to the errors alleged, it may safely be said that if half that has been so earnestly urged by counsel in these cases be well founded, the confiscation acts would be nugatory from the difficulty of putting them judicially in force, though their constitutionality were conceded.
Undoubtedly, by the individual, whose property is thus seized and condemned for acts of hostility to his government, the course pursued would be scrutinized with an eye quick to detect errors, and it is not strange that this critical spirit should affect the argument here. When to this is added the belief, long inculcated, that the Federal government, however strong in a conflict with a foreign foe, lies manacled by the Constitution and helpless at the feet of a domestic enemy, we need not be surprised that both the power of Congress to pass such a law as the one in question, *345 and the capacities of the courts to enforce it, should meet with a stout denial.
But we do not believe that the Congress of the United States, to which is confided all the great powers essential to a perpetual union  the power to make war, to suppress insurrection, to levy taxes, to make rules concerning captures on land and on sea  is deprived of these powers when the necessity for their exercise is called out by domestic insurrection and internal civil war  when States, forgetting their constitutional obligations, make war against the nation, and confederate together for its destruction.
And we are further of opinion that where, the constitutionality of the confiscation acts being established, we are called upon to sit in review on the judicial proceedings of the inferior courts in the enforcement of these statutes, we are to be governed by the reasonable and sound rules applicable to analogous cases in the courts, and not by a system of procedure so captious, so narrow, so difficult to understand or to execute, as to amount to a nullification of the statute.
The framers of the act of July 17th, 1862, appear to have anticipated much of what has been since urged in regard to the mode of proceeding in the execution of that statute. Seeing very clearly that the cases of seizure under the law would be mainly on land, and would not, in that case, be cognizable as admiralty cases, and that being founded on the principle of confiscating enemy property, they were not strictly revenue cases; their attention was called to the proper mode of procedure in the enforcement of the law.
As the act was designed to introduce the principle of confiscating enemy property seized on land, like that seized on water, applying the confiscation, however, to the property of a limited class of enemies, instead of to all enemies, it was conceived that the proceeding should be, in its essential features, analogous to those which the courts of admiralty were accustomed to use in property captured at sea. The same courts were to have jurisdiction, the same officers were to administer the law, and, as those courts were *346 already in possession of jurisdiction in revenue and admiralty cases, and as the analogies of those cases to the new jurisdiction conferred were supposed to present a mode of enforcing the law adapted to the latter in their main features, it was enacted that the proceedings under the statute should conform, as near as might be, to proceedings in admiralty or revenue cases; and, foreseeing also that in some respects they could not be strictly so conformed, the statute authorized the courts to make such orders, establish such forms of decrees and sale, and direct such deeds, when real estate shall be the subject of sale, as shall fitly and efficiently effect the purposes of the act.
Unquestionably, it was within the power of Congress to provide a full code of procedure for these cases, but it chose to give a direction on the subject which, adopting, as a general rule, a well-established system of administering the law of capture, looked to the fact that departures from that system might be necessary, and invested the courts with a discretion in that regard.
Five or six cases arising under this statute were argued before us at the last term, and, appreciating both the difficulty and the importance of some of the points raised in argument, they were all ordered to be argued again at this term, and have, under that order, been ably and fully reargued. They have all been disposed of but this, and the court have not hesitated, where there was a substantial departure from the mode of proceeding directed by the statute, to reverse the decree of the courts below in the cases which were here on error to those proceedings. And when we have found the proceedings to be conformable to the course of procedure of revenue and admiralty cases, we have held the decrees to be valid. The cases thus decided, and especially the case of Miller v. United States, in effect dispose of all the objections taken to the action of the court in this case, even if that action were here for review directly, instead of being presented collaterally in another suit.
But, as one point was much and earnestly pressed as peculiar to this case, and as conclusive against the validity of *347 the confiscation proceedings, that point will be further considered.
It is argued that there was no such judicial seizure of the land which was condemned and sold as to bring it within the jurisdiction of the court.
The record shows that the marshal of the District of Columbia, in which court the proceeding was had, and within the territorial jurisdiction of which court the land was situated, did seize the land under the instruction of the attorney of the United States for the district. No objection is made that this seizure was not full and complete. The order of the district attorney was directed to the marshal of the District of Columbia and described the property to be seized, and stated that the seizure was to be made for the purpose of instituting proceedings for its condemnation under the act of July 17th, 1862. The marshal returned on this paper that he had seized the property and given notice to the tenants in possession, and he makes a part of this return the notice served on the occupants of the premises, in which he states that it is to be held subject to the order of the United States District Court for the District of Columbia. After this the libel was duly filed in that court, and a monition was issued from it to the same marshal, ordering him to give due notice and to attach the property and to detain the same in his custody until the further order of the court in the premises. To this monition no return was made by the marshal except a certificate of publication of notice.
The proposition of the plaintiff's counsel is, that because no return of the marshal was made that he seized the property under this monition, the court had no jurisdiction of the case, and its subsequent condemnation and sale were void.
When we consider that it was the same officer and the same individual who had already seized the property, and had it in his control and possession, and that his statement to that effect was before the court, with the addition that he held it subject to the order of the court, that he was the only executive officer of the court who could make the *348 seizure, the point raised seems to be as narrow and unsubstantial as the second seizure would be useless.
The argument is based upon the analogy of revenue seizures, which are always of personal and movable property, and which are always made in the first instance by some other officer or individual than the marshal, and which must be taken possession of by the marshal as the representative of the court. This is usually done under a process of the court for the purpose of bringing the property under its recognized control. And this is at once the reason, and suggests the limit of the two seizures in revenue cases so much relied on by counsel.
Now, suppose the property in this case had been personal property, how could the marshal make a seizure of that which was already in his manual possession? Whose possession would he displace? Could one hand represent the seizure under the monition and the other the seizure under the act of Congress? And can it be seriously contended that this must be done to give the court jurisdiction, when the officer of the court held the property already for condemnation or discharge as the court might order?
It may, however, be said that he should have made return of the writ, that he had seized and held the property under that. Such a return as to seizure would have been false, because he had seized it before and could make no second seizure, in fact, by taking it from his own possession. And he had already informed the court that he detained the property subject to its order.
The proceeding inaugurated by the district attorney is designed to bring the property before the court. It can have no other purpose or end, unless it is released by his order. The district attorney and the marshal are both officers of the court, and for that reason are selected to institute the proceeding by which the power of the court is called into exercise. When, therefore, the property is in the course of this proceeding seized by the marshal, and when with the filing of the libel all that has been done is brought before the court and it adopts and recognizes this seizure, the property *349 is held by him subject to the order of the court, and is under its control, and no second seizure by the same officer can be necessary.
In regard to real estate, the argument is still more forcible. The remarks of this court in Cooper v. Reynolds, already cited, are directly in point. Speaking of the various modes of acquiring jurisdiction, it was there said, that "while the general rule in regard to jurisdiction in rem requires the actual seizure and possession of the res by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. Among this latter class is the levy of a writ of attachment or seizure of real estate, which being incapable of removal, and being within the territorial jurisdiction of the court, is for all practical purposes brought under the jurisdiction of the court by the officer's levy of the writ and return of that fact in the court."
When, therefore, the officer, as in this case, had seized the property for condemnation, and had made known that fact to the court, it was quite certain that it would be within reach of its process when condemned for sale, and when it became necessary to put the purchaser in possession of it. No change of the title or possession could be made, pending the judicial proceedings, which would defeat the final decree. The seizure was therefore, in our judgment, sufficient to subject the land to the jurisdiction of the court.
The judgment of the Supreme Court of the District of Columbia is therefore
AFFIRMED.
Mr. Justice DAVIS expressed his concurrence in the judgment, though he stated that he had not been able to concur in all that was said by the court in the preceding opinion.
Mr. Justice FIELD, with whom concurred Mr. Justice CLIFFORD, dissenting.
I am compelled to dissent from the judgment of the court in this case.
*350 I agree with the majority that as the decree of confiscation, under which the defendant asserts title to the demanded premises, comes before us collaterally, it cannot be attacked for mere errors or irregularities committed in the progress of the cause in which it was rendered. It can be only attacked for defects which go to the jurisdiction of the court, either over the subject-matter or the parties, or to render the particular decree. It is not strictly correct to say that, if the jurisdiction over the subject-matter and the parties exists in a particular case, any defect in the decree rendered can only be taken advantage of on appeal or by direct proceedings. That jurisdiction may exist and yet the decree may be so variant from that which the court was authorized to pronounce as to be void on its face. If the law, for example, authorize a pecuniary fine, the court cannot award imprisonment. If the law directs only damages to be assessed, the court cannot decree a specific performance. If the law declares that only a life estate shall be confiscated, the court cannot disregard its limitation and condemn the fee. The judgments in such cases would be void in whole or part, notwithstanding complete jurisdiction was had over the subject and the parties in controversy. There are certain limitations to the action of courts even after they have acquired jurisdiction which they cannot transcend without opening their judgments to collateral attack. In other words, jurisdiction over the subject-matter and parties does not authorize a judgment in the case of any and every kind.
All reasonable presumptions are indulged in support of judgments when collaterally attacked. So large are these presumptions that they generally answer as an explanation for the absence of all matters in the record, which are required to be taken before the judgment can be lawfully entered. As the presumptions are indulged to supply the absence of averments of the particular facts presumed, they cease to be received when the contrary of the particular supposed facts appears. Thus when a record of a judgment, rendered in an action at law upon an issue joined between *351 the parties, is produced, in which no verdict of a jury or finding of the court appears, upon the existence of which alone the judgment could be entered, it will be presumed that such verdict or finding was had. But, on the other hand, if it affirmatively appear in the record that no such proceeding was had, the judgment may be attacked as having been rendered without authority. It is of no avail, then, to invoke the doctrine that a judgment cannot be collaterally assailed. The doctrine does not apply to a case of this kind, for the record itself establishes the invalidity of the judgment produced.
The objections which I make to the decree, upon which the defendant asserts title, go to the jurisdiction of the court over the property condemned, to its jurisdiction to enter the decree rendered, and to the validity of the act of July 17th, 1862. Similar objections were taken by me in a dissenting opinion to the decree in the case of Miller v. United States, recently decided, but the importance I attach to them justifies their further elucidation.
First; as to the jurisdiction of the court over the property. The executive seizure of the property required by the act of Congress is preliminary to the commencement of judicial proceedings for its forfeiture. "After the same shall have been seized," says the statute, proceedings shall be instituted. Now, when the executive seizure in this case was made, what was the condition of the property before judicial proceedings were taken? Was it in the custody of the court? Clearly not. As yet the court had nothing to do with it  no more than, before suit, it has to do with a vessel seized by the collector for a violation of the revenue laws, or brought into port by a prize crew for an attempted breach of blockade. The fact that the marshal was employed as the agent of the President in making the seizure, did not change the position of the property. The President might have selected any other person as his agent with the same result. He might, at this stage, have released the property from seizure upon his own volition, without interfering with the authority of, or coming in collision with the court. As yet *352 no relations were established between the court and the property seized. Whatever the marshal, in making the preliminary seizure, may have said to the occupants of the premises seized, or whatever notice he may have given to them, whether it was that he held the property subject to the directions of the President, or to the order of the District Court or district attorney, in no wise affected the condition of the property, or created any relation between it and the court. The existence of any such relation did not depend upon the declaration of that officer, who, as yet, was not acting under any judicial process.
The next proceeding was the filing of the libel of information; but that did not change the relation between the court and the property. The libel was the foundation for the issue of the process of the court to bring the property within its custody; but, of itself, without such process, it worked no change in the condition of things. When was it ever pretended that the mere filing of a libel, without the issue of process, brought person or thing into the custody of the court? When the libel was filed process was ordered, and process was issued, commanding the marshal to attach the property and detain the same in his custody. By attachment under this judicial process, had it been made, the court would have acquired jurisdiction over the property, for it is by seizure under judicial process, and that alone, that the court takes the res into its custody. But the process thus issued was never served, and the jurisdiction of the court over the property rested upon the preliminary seizure alone. And yet we are told by the majority of the court that the objection that this preliminary seizure was insufficient to give the requisite jurisdiction, and that a new seizure, under judicial process, was necessary, is a very narrow and unsubstantial objection. I answer, that no objection is narrow or unsubstantial which goes to the jurisdiction of the court to forfeit the property of a citizen upon ex parte proceedings, without a hearing, for alleged public offences of which he is assumed to be guilty, because he did not appear to a citation, which the law prohibited from being communicated *353 to him. This court has repeatedly dismissed writs of error because tested by a wrong officer, or made returnable on a day other than the first day of the term, or because they did not embrace all the parties to the record; and when it has been urged that the objections taken to them were extremely narrow and unsubstantial, the answer has been that nothing could be treated as narrow and unsubstantial, and for that reason disregarded, which was prescribed by law as the mode of exercising the appellate jurisdiction of the court. So, here, nothing can justly be considered as either narrow or unsubstantial which is required by law to give jurisdiction to a court to enforce penal statutes, in the absence of the alleged offenders against their provisions.
Second; as to the jurisdiction of the court to render the decree in the confiscation case. The act of Congress, as already stated, is highly penal in its consequences, and by all established canons of interpretation should be strictly construed.[*] Its every requirement should be rigidly exacted. What, then, are its requirements? It declares that the proceedings instituted for the condemnation of the property seized shall conform as nearly as may be to proceedings in admiralty or revenue cases, and if the property shall be found to have belonged to a person engaged in the rebellion, or who has given aid and comfort thereto, the same shall be condemned.
As the proceedings in the case upon which the defendant relies related to land, they should have conformed, according to those provisions, as nearly as practicable to proceedings in revenue cases. Now the statute of 1799 prescribes the proceedings in these cases, and declares that after default is made in one of them, "the court shall proceed to hear and determine the cause according to law," a clause which has been judicially held, and in my opinion correctly held, to make it imperative upon the court that there shall be some hearing before a decree of forfeiture is rendered, and "the *354 court will require," says Mr. Justice Sprague, in such cases, "the prosecutor to introduce full proof of the allegations in the libel whenever the circumstances shall make it reasonable."[*]
If we consider the provision of the law of 1799, and the provision of the act of 1862, for a finding, it seems impossible to escape the conclusion, that a finding upon hearing is an essential prerequisite to any decree of forfeiture in these confiscation cases. The authority to render the decree is in express terms made conditional upon a particular fact being found. If the fact designated be found, says the statute, the property shall be condemned, which is equivalent to declaring that if such fact be not found, no condemnation shall be decreed. As the record produced in the case, upon which the defendant relies, shows that no hearing was had and no finding was made, the decree of forfeiture rendered therein appears to me to be an act of judicial usurpation.
Third; as to the validity of the clauses of the act of 1862, providing for the seizure and confiscation of the property of rebels. This point I have already considered at length in the dissenting opinion in Miller v. United States, and I shall only add a few words. In that dissenting opinion I expressly stated that it had been held that, when the late rebellion assumed the proportions of a territorial civil war, the inhabitants of the Confederate States and the inhabitants of the loyal States became reciprocally enemies to each other, and that the inhabitants of the Confederate States engaged in the rebellion, or giving aid and comfort thereto, were at the same time amenable to the municipal law as rebels, and that the correctness of this determination was not disputed; that the question was, not as to the right of Congress to adopt either of these courses, but what course had Congress, by its legislation, authorized. It is indisputable, that whatever Congress may authorize to be done, by the law of nations, in the prosecution of war against an independent nation, it may authorize to be done when engaged in the prosecution *355 of a territorial civil war against the domestic enemies of the United States. I contend only that the limitations, which the law of nations has imposed in the conduct of war between independent nations, should apply and govern the United States in whatever war they may prosecute. I do not doubt, and never have doubted for a moment, that the United States possess all the power necessary to suppress all insurrections, however formidable, and to make their authority respected and obeyed throughout the limits of the republic. But this recognition of the power of the government cannot be permitted to preclude a comparison of all legislation, adopted to uphold its authority, with the Constitution. And in so comparing the act of July 17th, 1862, I am unable to find in that great instrument any sanction for the clauses in the act providing for the seizure and confiscation of the property of persons charged with particular criminal acts. I do not find it in the war powers of the government, for they sanction only the confiscation of the property of public enemies. I do not find it in the municipal power of the government to legislate for the punishment of crimes, for that is subject to limitations, which secure to the accused a trial by a jury of his peers, and the right to be confronted with the witnesses against him.
It is true, as already stated, that enemies participating in the rebellion, or giving aid and comfort thereto, might have been treated as rebels and held amenable to the municipal law. Yet the terms, enemies and rebels, are not synonymous, even though the rebellion attained the proportions of a territorial civil war. A permanent resident of the Confederacy was an enemy, although he may always have opposed the rebellion and remained loyal in his feeling and action to the National government. His position as an enemy was determined by his residence, and had nothing to do with his personal disposition or conduct. But he was not a rebel, and could not have been prosecuted as such unless he was personally guilty of treasonable acts.
Congress well understood the distinction between enemies and rebels, and we are not justified in supposing that it intended *356 to disregard this distinction in its legislation, even were that practicable, as it was not.
My conclusion is that the judgment of the court below was erroneous, and should be reversed.
NOTES
[*] See Cooper v. Reynolds, 10 Wallace, 308, and the numerous cases there cited.
[*] 1 Kent's Commentaries, 376.
[*] United States v. Schooner Lion, 1 Sprague, 400.